FILED IN CLERK'S OFFICE
JEFFERSON CIRCUIT CT.

2009 OCT 19  A 9: 26

CLERK 09CI 10225

BY_____D.C.

(10)

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name )   C. Date of Delivery   OCT 1 3 2009 |

1. Article Addressed to:

The Corporation Trust
Corporation Trust Center
1209 Orange St.
Wilmington DE 1980

00CI
10225   OCT 06 2009

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   7008 1830 0000 3092 7118

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



2009 OCT 12  A 9: 50

CLERK 1

09 CT 10225

(10)

---

| **SENDER:** COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name )   C. Date of Delivery |
| 1. Article Addressed to:<br>Kentucky Secretary of State<br>700 Capital Ave., Suite 86<br>Frankfort Ky 40601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>Media<br>OCT 06 2009 |
| 09 CT 10225 | 3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7008 1830 0000 3092 7095 |
| PS Form 3811, February 2004 | Domestic Return Receipt   102595-02-M-1540 |

OOCI 10225

10

FILED IN CLERK'S OFFICE
JEFFERSON CIRCUIT CT.

2009 OCT 13 P 12: 11

CLERK 1

BY_____ D.C.

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☐ Agent  ☐ Addressee<br>B. Received by ( *Printed Name* )  OCT-08-09  C. Date of Delivery<br>Linda A. Smith |
| 1. Article Addressed to:<br>Fanfare Media<br>The Prentice Hall Corp<br>Systems, Inc.<br>421 W. Main St.<br>Frankfort Ky 40601<br>OOCI 10225 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br>SC<br>(10)<br>3. Service Type<br>☐ Certified Mail   ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>(Tran...   7008 1830 0000 3092 7101 | 102595-02-M-1540 |
| PS Form 3811, February 2004 | Domestic Return Receipt |

Trey Grayson
Secretary of State

Commonwealth of Kentucky
Office of the Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-2848 EXT. 440
Fax (502) 564-1484

FROM:    Circuit Court Clerk
         Jefferson County, Division: 10
         600 West Jefferson St.
         Louisville, KY 40202

RE:      CASE NO: 09-CI-10225

DEFENDANT: **MARKET TECH MEDIA CORPORATION**

         SUMMONS DIVISION
         SECRETARY OF STATE

DATE:    October 19, 2009

USPS Certified Mail ID: 71922677001000949510

The Office of the Secretary of State was served with a summons and accompanying
documents for the captioned defendant on

October 8, 2009

This office served the defendant by sending a copy of the summons and accompanying
documents via certified mail, return receipt requested, on

October 9, 2009

The US Postal Service has provided a scanned image of the return receipt confirming
receipt of summons. The image is provided to the right of this page.

---

Kentucky Secretary of State's Office                    Summons Division                    10/19/2009

---

**UNITED STATES POSTAL SERVICE**

2009 OCT 23  A 11: 33

FILED IN CLERK'S OFFICE
JEFFERSON CIRCUIT CT.
Date Produced: 10/19/2009

KENTUCKY SECRETARY OF STATES OFFICE - CO

BY _____ D.C.
CLERK 1

The following is the delivery information for Certified Mail™ item number 7192 2677 0010
0094 9510. Our records indicate that this item was delivered on 10/13/2009 at 09:22 a.m. in
VALENCIA, CA, 91355. The scanned image of the recipient information is provided below.

Signature of Recipient:




Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local post office or Postal Service representative.

Sincerely,

United States Postal Service



Commonwealth of Ken
Jefferson County
David Nicholson
Circuit Court Clerk

RSON County

e Assignment Report

Receipt Number: 09-0084067-A

DATE: 10/06/2009

TIME: 02:23 PM

*** (II) CIRCUIT CIVIL-FILING WITH ATTORNEY TAX FEES ***

CASE NO: 09-CI-010225

RECEIVED FROM: S. H. MILLER

ACCOUNT OF: NTS VS FANFARE

| | | Circuit Court | |
| --- | --- | --- | --- |

**Reference/Case Number:** | 09-ci-010225 |

**Division**

| udge Irv Maze | | 630299 |
| --- | --- | --- |

| 2009   2:13:45PM | |

| 1. | Civil Filing Fee (Q) | 115.00 |
| 2. | ATJ Fee (1) | 20.00 |
| 3. | Court Technology MCFO(K(CT)) | 10.00 |
| 4. | Library Fee (L) | 3.00 |
| 5. | Att Tax Fee MCFO(K(Q)) | 5.00 |
| 6. | Jury Demand/12 CS(W(M)) | 60.00 |

TOTAL:            $213.00

CHECK:            $213.00

***DIFF:            0.00

*** Check Number: 15083

Prepared By: T. Allen
** MCFO=Money Collected for Others
** CS=Charge for Services

Filing (KYCOURTS)

Page 1 of 1

**Date Printed:**  10/06/2009          **Time Printed:**     2:13:48PM          **Page:**   1

NO.
# 09CI 10225

**JEFFERSON CIRCUIT COURT**
JEFFERSON CIRCUIT ~~DIVISION~~
~~JUDGE~~ DIVISION TEN (10)

NTS DEVELOPMENT COMPANY,
AS AUTHORIZED AGENT FOR
MRI SPRINGS PORTFOLIO
10172 Linn Station Road
Louisville, Kentucky 40223

**PLAINTIFF**

v.                            **COMPLAINT**

FANFARE MEDIA WORKS, INC. *C/m*
25300 Rye Canyon Road
Valencia, California 91355
SERVE:      The Prentice Hall Corporation Systems, Inc.
            421 W. Main Street
            Frankfort, Kentucky 40601

**DEFENDANTS**

Petition and _____ 8 Exhibits Flc.
Summons and _____ 2 _____ ICS Sealed C/n
OCT 6 - 2009
Attest DAVID L. NICHOLSON, Clerk
By _____ D.C.
Sec. of State

-and-

MARKET TECH MEDIA CORPORATION
25300 Rye Canyon Road
Valencia, California 91355
SERVE:      The Corporation Trust Company *C/m*
            Corporation Trust Center
            1209 Orange Street
            Wilmington, Delaware 19801

            Kentucky Secretary of State *S/S*
            Frankfort, Kentucky 40601

-and-

OTHER UNNAMED DEFENDANTS *RAP*
(HOLD PROCESS)

            KENTUCKY SECRETARY OF STATE
            Frankfort Kentucky

                    * * * * *

-1-

NOW COMES the Plaintiff, MRI SPRINGS PORTFOLIO, by and through its authorized

agent, NTS DEVELOPMENT COMPANY, by counsel, and for its cause of action against

Defendants, FANFARE MEDIA WORKS, INC., and MARKET TECH MEDIA

CORPORATION, states as follows:

## Parties

1.      Plaintiff, MRI SPRINGS PORTFOLIO (hereinafter "MRI") is a corporation

organized in the Commonwealth of Kentucky with its principal place of business in Louisville,

Jefferson County, Kentucky.  NTS DEVELOPMENT COMPANY is the authorized agent for

MRI SPRINGS PORTFOLIO.

2.      Defendant, FANFARE MEDIA WORKS, INC. (hereinafter "FMW"), is a

corporation registered in the State of California with its principal office located at 25300 Rye

Canyon Road, Valencia, California 91355.  Plaintiff believes FMW may be more effectively

served at The Prentice-Hall Corporation System, Inc., 421 W. Main Street, Frankfort, Kentucky

40601.

3.      Defendant, MARKET TECH MEDIA CORPORATION (hereinafter "Market

Tech"), is a corporation organized in the State of Delaware with its principal office located at

25300 Rye Canyon Road, Valencia, California 91355.  Plaintiff believes Market Tech may be

more effectively served at The Corporation Trust Company, Corporation Trust Center, 1209

Orange Street, Wilmington, Delaware 19801 and the Kentucky Secretary of State of the

Commonwealth of Kentucky who it has designated as its agent.

4.      Unnamed Defendants are persons or entities who have been transferred property or benefitted financially from the fraudulent transfer and are to be named and determined through discovery.

**Jurisdiction**

5.      Jurisdiction is proper pursuant to Section 112 of the Constitution of the Commonwealth of Kentucky.

6.      Venue is proper pursuant to KRS 452.450.

7.      The amount in controversy exceeds the jurisdictional minimum of the Court.

**Factual Allegations**

8.      On or about July 16, 1990, TV Fanfare Publications, Inc., executed a valid commercial lease with NTS for the premises located at 950 Breckinridge Lane, Suite 210, Louisville, Kentucky 40207.  A copy of the lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit A".

9.      On or about December 7, 1995, TV Fanfare Publications, Inc. and NTS entered into a First Amendment to Lease whereby, among other things, the Term of the Lease was extended.  A copy of the First Amendment to Lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit B".

10.     On or about May 1, 2000, TV Fanfare Publications, Inc. and NTS entered into a Second Amendment to Lease whereby, among other things, the Term of the Lease was extended and rent for the property were increased.  A copy of the Second Amendment to Lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit C".

11.     On or about February 5, 2003, TV Fanfare Publications, Inc. and NTS entered into a Third Amendment to Lease whereby, among other things, the Term of the Lease was extended.  A copy of the Third Amendment to Lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit D".

12.     On or about March 4, 2008, FMW OC, INC., a Delaware corporation, successor-in-interest to Fanfare Media Works, Inc., a California corporation, successor-in-interest to TV Fanfare Media Works, Inc., and MRI Asset Management, LLC, a Delaware limited liability company, as Agent and Asset manager, successor-in-interest to NTS/Springs Office, Ltd., entered into a Fourth Amendment to Lease whereby, among other things, the Term of the Lease was extended.  A copy of the Fourth Amendment to Lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit E".

13.     The Original Lease, First Amended, Second Amended, Third Amended and Fourth Amended Lease are collectively referred to herein as the "Lease".

14.     Pursuant to the Fourth Amendment to Lease, Plaintiff's Exhibit E, the Term of the Lease was extended for a period to begin on March 31, 2008 and to expire on March 31, 2013.

15.     Pursuant to Paragraph (B) of the Fourth Amendment to Lease, Plaintiff's Exhibit E, Paragraph 4, entitled "**RENT:**" shall be as follows:

Annual Base Rent
04/01/08 to 03/31/09 [1 Year Period]: $34,000.00 ($17.00 p.s.f. per annum);
04/01/09 to 03/31/10 [1 Year Period]: $35,000.00 ($17.50 p.s.f. per annum);
04/01/10 to 03/31/11 [1 Year Period]: $35,500.00 ($17.75 p.s.f. per annum);
04/01/11 to 03/31/13 [2 Year Period]: $36,000.00 ($18.00 p.s.f. per annum).

Monthly Installments of Base Rent
04/01/08 to 03/31/09: $2,833.33;
04/01/09 to 03/31/10: $2,916.67;
04/01/10 to 03/31/11: $2,958.33;
04/01/11 to 03/31/13: $3,000.00.

16. Paragraph Twenty-nine (29) of the original Lease entitled "Notices" states, "All notices required herein to be given by **LESSOR** to **LESSEE** shall be given by certified mail and shall be sent to <u>TV Fanfare Publications, Inc., 25300 Rye Canyon Road, Valencia California</u> <u>91355, Attn: Mr. Stanford Sanoff</u> or to such other person or places as shall be designated in writing by **LESSEE**."  Plaintiff's Exhibit A, Paragraph Twenty-nine (29).

17. Paragraph Twenty-six (26) of the original Lease entitled "Default and Remedies", states:

> If **LESSEE** defaults in the payment of rent or any additional charge or cost to be paid by **LESSEE** as provided in this lease or if **LESSEE** defaults in the prompt and full performance and observance of any of the terms and conditions of this lease and such default shall continue uncorrected for a period of ten (10) days after receipt of written notice thereof from **LESSOR**, then, in addition to any other rights and remedies it may have, **LESSOR** may, at its option, with or without further notice, terminate this lease and enter into possession of the demised premises and sue for and recover all the rent due, at the rate aforesaid, up to the time of such entry, without releasing the **LESSEE** from liability for rent for the unexpired lease term.

18. On March 4, 2008, Mr. Brendan Ross, (hereinafter "Ross") acting as Chief Executive Officer and President of FMW signed the Fourth Amendment to Lease, Plaintiff's Exhibit E.

19. NTS received an undated letter from Market Tech informing it that effective June 15, 2009, substantially all of the assets of FMW were transferred to Market Tech.  The letter was signed by Mr. Tom Daniel, Chief Executive Officer of Market Tech.  The aforementioned letter

-5-

noticed a return address of 25300 Rye Canyon Road, Valencia, California 91355.  A copy of said letter is attached hereto and incorporated herein marked as Plaintiff's Exhibit F.

20.     On or about July 21, 2009, NTS received a letter from Market Tech informing it that Ms. Paula Clayton, a former employee of FMW requested that Market Tech return keys to the property subject to the Lease, located at 950 Breckinridge Lane, Suite 210, Louisville, Kentucky 40207.  A copy of said letter is attached hereto and incorporated herein marked as Plaintiff's Exhibit G.

21.     On or about August 21, 2009, NTS sent a letter to Mr. Stanford Sanoff of FMW via certified mail, return receipt requested.  Said letter notified FMW that pursuant to Paragraph 26 of the Lease entitled "Default and Remedies" FMW, successor-in-interest to Fanfare Media Works, Inc., successor-in-interest to TV Fanfare Publications, Inc., was in default of the lease agreement for nonpayment of July 2009 base rent and operating expenses in the amount of three thousand one hundred seventeen ($3,117.67) dollars and 67/100 and August 2009 base rent and operating expenses in the amount of three thousand one hundred seventeen ($3,117.67) dollars and 67/100.  Said letter provided FMW the opportunity to cure the default within ten (10) days per the terms of the original Lease.  A copy of said letter is attached hereto and incorporated herein, marked as Plaintiff's Exhibit H.

22.     On or about August 31, 2009, counsel for NTS, Stephen H. Miller, sent a letter to Mr. Stanford Sanoff of FMW and Market Tech notifying FMW and Market Tech of the default under the Lease and the preferential transfers of assets from FMW to Market Tech Media Corporation.  A copy of said letter is attached hereto and incorporated herein, marked as Plaintiff's Exhibit I.

-6-

23.     FMW has failed to pay rent for the months of July, August and September 2009 per the terms of the Lease.

24.     As per the letter referenced in paragraph eighteen (18) of Plaintiff's Complaint, Plaintiff believes that FMW and Market Tech have engaged in fraudulent activities through the transfer of assets in order to attempt to escape liability under the Lease.

25.     As of the date of this Complaint, Defendants, FMW and Market Tech, are individually, jointly and severally indebted to Plaintiff, NTS under the Lease.

26.     Counsel for Plaintiff is not a regular, salaried employee of Plaintiff pursuant to KRS 411.195, and has been employed specifically for the purposes of the enforcement of the Lease, collection of rents due and owing under the Lease and recovery of damages.  As such , Plaintiff is entitled to recovery of its attorney's fees.

## COUNT I - BREACH OF CONTRACT

27.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-five (25) above as if fully set out herein.

28.     On or about July 16, 1990, TV Fanfare Publications, Inc., executed a valid commercial lease with NTS for the premises located at 950 Breckinridge Lane, Suite 210, Louisville, Kentucky 40207.  A copy of the Lease is attached hereto and incorporated herein marked as Plaintiff's "Exhibit A".

29.     TV Fanfare Publication, Inc., and NTS executed subsequent Amendments to the Lease, the last of which being the Fourth Amendment to Lease whereby, among other things FMW OC, INC., a Delaware corporation, successor-in-interest to Fanfare Media Works, Inc., a California corporation, successor-in-interest to TV Fanfare Media Works, Inc., and MRI Asset

-7-

Management, LLC, a Delaware limited liability company, as Agent and Asset manager,

successor-in-interest to NTS/Springs Office, Ltd., extended the terms of the lease from March 31,

2008 to March 31, 2013.

30.     Pursuant to Paragraph (B) of the Fourth Amendment to Lease, Plaintiff's Exhibit

E, Paragraph 4, entitled "**RENT:**" shall be as follows:

Annual Base Rent
04/01/08 to 03/31/09 [1 Year Period]: $34,000.00 ($17.00 p.s.f. per annum);
04/01/09 to 03/31/10 [1 Year Period]: $35,000.00 ($17.50 p.s.f. per annum);
04/01/10 to 03/31/11 [1 Year Period]: $35,500.00 ($17.75 p.s.f. per annum);
04/01/11 to 03/31/13 [2 Year Period]: $36,000.00 ($18.00 p.s.f. per annum).

Monthly Installments of Base Rent
04/01/08 to 03/31/09: $2,833.33;
04/01/09 to 03/31/10: $2,916.67;
04/01/10 to 03/31/11: $2,958.33;
04/01/11 to 03/31/13: $3,000.00.

31.     As of the date of the filing this Complaint, Defendants, FMW and Market Tech

have failed to pay base rent and late fees for the months of July, August and September 2009.

## COUNT II - BREACH OF STATUTORY DUTIES, FRAUDULENT TRANSFERS AND CONSPIRACY

32.     Plaintiff re-alleges and incorporates by reference th allegations set forth in

paragraphs one (1) through thirty-one (31) above as if fully set out herein.

33.     FMW and Market Tech have engaged in the fraudulent transfer of assets in order

to escape liability under the Lease.  As a result of the fraudulent transfer, Market Tech is liable

under the terms of the Lease and have violated statutory provisions of the laws of the

Commonwealth of Kentucky including Chapter 378 of the Kentucky Revised Statutes.

34.     As Market Tech has failed to register in the Commonwealth of Kentucky and has committed a tortuous act affecting commerce in the Commonwealth of Kentucky, it has nominated the Secretary of State of the Commonwealth of Kentucky as its agent for service of process.

35.     Per the terms of the lease, failure to pay rent or any additional fees results in a breach of the Lease.

36.     FMW and Market Tech have conspired together and with the unknown (to be determined Defendants) by agreeing to and committing the overt acts heretofore alleged causing with scienter statutory and civil law breaches and violations.

37.     FMW and Market Tech are in default under the Lease and have anticipatory repudiated the terms of same including the following overt acts:

      a.     By attempting to return keys in the Commonwealth of Kentucky;

      b.     By vacating the premises;

      c.     By removing personalty and fixtures in direct violation of K.R.S. 383.060, et seq. (Kentucky landlord's lien).

38.     Therefore, NTS is entitled to collect from FMW and Market Tech any and all sums due under the Lease through March, 2013.

## COUNT III - STATUTORY LANDLORD'S LIEN

39.     Upon information and belief, the Defendants, and each of them, including the unnamed Defendants, own and keep at the leased premises certain personal property which the Defendants have brought onto the property contemporaneous in time and subsequent to the entry of the lease agreement and taking possession of the property.  Said property consists of

-9-

equipment and fixtures, including, but not limited to, chairs, tables, file cabinets, lighting, mirrors, computer equipment, copiers, desks and other furniture and furnishings and other personal property utilized in the business of the Defendants.

40.     Pursuant to KRS 383.070, Plaintiff has a lien on the said personal property of the Defendants, FMW, and by reason of the formation of Market Tech on June 9, 2009 as a corporation, all of the said property set forth above may have been transferred and/or taken to premises occupied by the Defendant, FMW, and/or occupied and controlled by the Unnamed Defendants. As said personal property has been transferred and/or removed from the premises, said landlord's lien attaches and follows said equipment, fixtures and furnishings. Any transfer of said property has been done in violation of Chapter 378 of the Kentucky Revised Statutes and is a fraudulent transfer. Any owner, or holder of said equipment or assets including, but not limited to, bank accounts, monies, furniture or equipment are holding said assets as a constructive trustee for the benefit of the Plaintiff, MRI.

41.     The lien of the Plaintiff is prior and superior to the claims of any and all other creditors of the Defendants or other persons including Market Tech pursuant to KRS 383.070.

42.     Subsequent to and contemporaneous in time and with full knowledge of claims made against the Defendants, and each of them, the Defendants and other persons, entities and firms unknown at this time, purposely and with malice and with specific intent to delay, hinder or defraud creditors including the Plaintiff herein gifted, conveyed, assigned or transferred the assets and the estate of other named Defendant, FMW, in violation of Chapter 378 of the Kentucky Revised Statutes concerning fraudulent and preferential transfers.

43.     The Plaintiff, being an aggrieved party, by the fraudulent conveyance and transfer for purposes of hindering, delaying and defrauding creditors including the Plaintiff herein, subjects the assets of the Defendant, FMW, and the Defendant, Market Tech,  and the assets of any other persons, entities or firms acting in consort with said Defendants to allow said assets to inure to the benefit of creditors generally, including the Plaintiff herein.  Said transfer having occurred within six months prior to the filing of this Complaint.

44.  Upon information and belief, funds allegedly loaned to FMW and secured by the assets of FMW were and are capital contributions by Defendants or Unnamed Defendants or persons in control of Defendants or Unnamed Defendants.

## DAMAGES

45.     Defendant FMW and Defendant Market Tech are indebted to Plaintiff in the amount of not less than $10,000.00 through September, 2009.

46.     The default by Defendants is an anticipatory repudiation of the terms of the Lease. All sums due but unpaid under the Lease for monthly base rent for the period from October 1, 2009 through March 31, 2013 totaling $122,083.33  are now due and owing.

47.     Pursuant to Section 26 of the Lease, Defendants are obligated for attorney's fees and litigation costs incurred in connection with this proceeding.

48.     If and to the extent assets and properties of Defendant FMW were transferred, directly or indirectly, to Defendant Market Tech, Market Tech is liable, to the extent of the value of such assets and properties at the time of any such transfer, for any damages due and owing by any of the other Defendants herein. The Defendants Market Tech and Unnamed Defendants are liable for any and all monies due and owing by all other Defendants herein by reason of their illegal and fraudulent

-11-

transfers and transfers to themselves as transferees of the assets of all other Defendants herein, including good will and contractual benefits and obligations. Any transfer is in direction violation of Chapter 378 of the Kentucky Revised Statutes and are willful and with malice and scienter and with intent to defraud the Plaintiff's and other residents and/or citizens of the Commonwealth of Kentucky.

49.  All damages set forth herein, with the exception of attorney's fees and costs, are liquidated sums upon which Plaintiff is entitled to interest at the legal rate of interest pre-judgment and/or said interest as set forth in the Lease and for which Plaintiff would be entitled at the judgment rate of interest after entry of judgment.

WHEREFORE, NTS  respectfully prays as follows:

A.    Plaintiff be granted judgment against Defendants for an amount to be determined by the trier of fact to sufficiently compensate it for breach of contract;

B.    Compensatory and punitive damages to make an example to others for violation and acts.

C.    For pre-judgment interest;

D.    For post judgment interest;

E.    For its costs herein expended including reasonable attorney's fees;

F.    Any and all other relief to which it may appear entitled, including injunctive relief;

G.    Plaintiff reserves the right to file an Amended Complaint naming all additional parties necessary, and;

H.    For any and all other relief as the Court deems just and proper including trial by jury.

Respectfully submitted,

STEPHEN H. MILLER
JEFFREY G. STOVALL
FORE, MILLER & SCHWARTZ
First Trust Centre, Suite 700 N.
200 S. Fifth Street
Louisville, Kentucky 40202
(502) 589-5250
*Counsel for Plaintiff*

THE SPRINGS

LEASE

BY AND BETWEEN

NTS/SPRINGS OFFICE LTD.   ("LESSOR")

AND

TV FANFARE PUBLICATIONS, INC.   ("LESSEE")

DATED _July 16_ , 19_90_

PLAINTIFF'S
EXHIBIT

A

SCANNED

APR 2 8 2008

BY _Grant Wells_

FN _Mtvfan-19900716-lease_

THE SPRINGS

TABLE OF CONTENTS

| | | PAGE NO. |
|---|---|---|
| 1. | FUNDAMENTAL EXHIBITS TO LEASE | 1 |
| 2. | GRANT AND PREMISES | 1 |
| 3. | TERM | 1 |
| 4. | RENT | 1 |
| | 4.1  RENT ADJUSTMENT | 2 |
| | 4.2  ESCALATION OF RENT - TAXES | 2 |
| | 4.3  INCREASE IN OPERATING EXPENSES | 2, 3 |
| | 4.4  RENTABLE AREA/RECORDS | 4 |
| | 4.5  ADDITIONAL RENT | 4 |
| 5. | SECURITY DEPOSIT | 4 |
| 6. | UTILITIES | 4 |
| 7. | SERVICES BY LESSOR | 4 |
| 8. | MAINTENANCE AND REPAIR: ALTERATIONS | 5 |
| 9. | PARKING | 5 |
| 10. | USE OF PREMISES | 5 |
| 11. | ROOF RIGHTS | 6 |
| 12. | FIRE INSURANCE COVERAGE | 6 |
| 13. | WAIVER OF SUBROGATION | 6 |
| 14. | DESTRUCTION OF PREMISES | 6 |
| 15. | LOSS OR DAMAGE TO PERSONAL PROPERTY | 6 |
| 16. | PERSONAL PROPERTY TAX | 6, 7 |
| 17. | ASSIGNMENT OF LEASE | 7 |
| 18. | INDEMNITY | 8 |
| 19. | INSURANCE | 8 |
| 20. | BANKRUPTCY | 8 |
| 21. | MECHANICS LIENS | 8 |
| 22. | EMINENT DOMAIN | 8, 9 |
| 23. | ABANDONMENT | 9 |
| 24. | SURRENDER AT END OF TERM | 9 |
| 25. | RE-ENTRY BY LESSOR | 9 |
| 26. | DEFAULT AND REMEDIES | 9 |
| 27. | HOLDOVER TENANCY | 9, 10 |
| 28. | MORTGAGE PRIORITY | 10 |
| 29. | NOTICES | 10 |
| 30. | ESTOPPEL CERTIFICATE | 10 |
| 31. | OTHER COVENANTS | 11 |
| 32. | BROKER COMMISSIONS | 10, 11 |

THE SPRINGS

Breckinridge Circle
Louisville, Kentucky    40223

<u>LEASE</u>

This agreement and lease, made and entered into this _16_ day of _July_, 19_90_, by and between <u>NTS/SPRINGS OFFICE, LTD. d/b/a THE SPRINGS</u> hereinafter called **LESSOR**, and <u>TV FANFARE PUBLICATIONS, INC.</u> hereinafter called **LESSEE**,

1.    <u>FUNDAMENTAL EXHIBITS TO LEASE.</u>

The exhibits listed below and attached to this Lease are incorporated herein by this reference.
    EXHIBIT "A".    FINAL PLANS AND SPECIFICATIONS FOR INTERIOR OFFICE FINISH TO THE PREMISES.
    EXHIBIT "B".    OFFICE SPECIFICATIONS AND ALLOWANCES.
    EXHIBIT "C".    LEASE RULES AND REGULATIONS.

2.    <u>GRANT AND PREMISES.</u>

LESSOR does hereby lease to **LESSEE** and **LESSEE** does hereby lease from **LESSOR** the following described premises to wit:
    Suite _210_, located on the second floor of "The Springs" office building, 950 Breckinridge Lane, Louisville, Kentucky 40207 containing _2,000_ gross rentable square feet and hereinafter referred to as "demised premises", "premises" or "leased premises". "Gross rentable square feet" is defined as the sum of the actual square feet, as measured from the outside of the exterior wall of the leased premises to the center line of any common walls of the leased premises, which includes _11_ % of such square footage which is deemed to be for common areas.

3.    <u>TERM.</u>

The term of this lease shall be for a period of _5_ years commencing on the _1st_ day of _August_, 19_90_, and ending on the _31st_ day of _July_, 19_95_. In the event said premises shall not be ready for occupancy on the commencement date set forth above, this lease shall remain in effect and the term thereof shall begin on the first day the premises are ready for occupancy and run for a period of _5_ calendar years from that date. If, in such event, the commencement of the lease term does not coincide with the first day of a calendar month, the monthly rental payments for the first and last months of the term shall be paid in a prorated amount which shall be computed on the number of days the **LESSEE** occupies the premises during the months in question.

4.    <u>RENT.</u>

During the lease term, **LESSEE** shall pay to **LESSOR** as rent, the sum of $_32,000.04_ per year in monthly installments of $_2,666.67_ per month. All rent payments shall be made payable to THE SPRINGS and paid in advance on the first day of each and every month. Rent payment and all sums hereinafter designated as additional rent shall be mailed to **LESSOR** at the office of NTS Development Company, 10172 Linn Station Road, Louisville, Kentucky 40223, all of which **LESSEE** hereby covenants and agrees to pay without demand or notice.

In the event **LESSEE** shall fail to pay any rent or other monies due hereunder after the same becomes due and payable there shall be chargeable on the unpaid amount a service charge of one and one-half (1 1/2%) percent per month or portion thereof.

4.1  <u>Rent Adjustment</u>.



A.  At the expiration of each Calendar Year (as hereinafter defined), the rent shall be adjusted to reflect any increases in the "Consumer Price Index" (the "CPI" as hereinafter defined) not to exceed 3% increase per year.  Such adjustment shall be accomplished by multiplying the Initial Base Rent by a fraction, the numerator of which shall be the sum of (i) the CPI as of January of the base year which is the year of lease execution (the "Original CPI") and (ii) 100% of the difference between the CPI as of the December of the then current year and the Original CPI, and the denominator of which shall be the Original CPI.  Any partial year or fraction thereof shall be prorated as necessary.  In no event shall any adjustment made pursuant to this paragraph result in a reduction of the then-current rent.

B.  The "Consumer Price Index" is hereby defined to be the Index now known as "United States Bureau of Labor Statistics Revised Consumer Price Index for Urban Wage Earners and Clerical Workers, United States City Average, all items - Series A (1967=100)," and if such Index shall be discontinued, then any successor agency thereto shall be used and if there is no successor consumer price index, then the parties hereto shall attempt to agree on a substitute index or formula.  In the event that LESSOR and LESSEE shall be unable to agree on a substitute index or formula, the matter shall be submitted for arbitration in accordance with the rules of the American Arbitration Association then prevailing.

4.2  <u>Escalation of Rent</u>.  <u>Taxes</u>.

A.  The real property taxes and assessments ("taxes") upon the building containing the demised premises and upon the real property upon which said building is constructed are currently $43,369.00 per year.  In the event of an increase in said "taxes" during the term of this lease, LESSEE covenants and agrees to pay to LESSOR as additional rent in each calendar year of the lease term, upon receipt of notice from LESSOR, a prorata share of such tax increase which prorata share shall be   One and Six Tenths Percent   (1.6%), the percentage which the number of square feet leased to LESSEE herein bears to the total number of rentable square feet in the building (125,016  square feet).  With respect to the calendar year in which the term ends, LESSEE shall pay only that portion of the amount otherwise payable, which the number of days between January 1 of said calendar year and the end of the term bears to 365 days.

The payment(s) required under this paragraph 4. 1 shall be made as above required, except that LESSEE'S payment to LESSOR for the period in which the lease term ends shall be made not later than the end of the term and if the amount of such payment is not then ascertainable, it shall be made on the basis of the last prior tax and adjustment shall be made as soon as the correct amount is ascertainable.

If at any time a tax or excise on rents, or other tax, however described, is levied or assessed against LESSOR on account of the rent reserved hereunder, as a substitute in whole or in part for taxes assessed or imposed on land and/or buildings, the same shall be included within the term "taxes" for the purpose hereof.

B.  LESSEE shall pay before delinquency any and all taxes and assessments, and license, sales, business, occupation or other taxes, fees or charges levied, assessed or imposed upon its business operations in the premises.

C.  In the event any taxes, fees or charges referred to in the preceding Paragraph B shall be assessed, levied or imposed upon or with the business or property of LESSOR, such assessment, fees or charges shall be paid by LESSEE to LESSOR promptly upon Lessor's request for such payment.

4.3  <u>Increase in Operating Expenses</u>.

A.  Should there be an increase or decrease in the operating expenses (as the term "operating expenses" is hereinafter defined) for any twelve month period during the term hereof, compared to the operating expenses incurred during that twelve month period which

is then current at the date of commencement of the lease term, the amount of such increase or decrease shall be ascertained and the rental reserved herein shall be adjusted as follows:  The monthly rental for and during each "leasehold year" (as the term "leasehold year" is hereinafter defined) after the first leasehold year shall be increased or decreased by  1.6  % of the amount of such increase or decrease divided by twelve (12).

B.  At the beginning of each leasehold year subsequent to the initial leasehold year, the LESSOR shall notify the LESSEE of the rental to be paid monthly by LESSEE for such leasehold year.  (Should the aforesaid monthly rental be not ascertained, the rental from the beginning of the leasehold year to the date of said ascertainment shall be forthwith adjusted and the rental, as so ascertained, for the balance of the leasehold year shall be paid monthly.)

C.  "Operating expenses" as used herein shall be the sum of the following for a twelve month period:   (1)  cost of cleaning building interior, including corridors, elevators, restrooms, staircase, windows and lobby, whether by contract cleaners or owner employed cleaners, including all "fringe" employment costs, and all supplies and materials necessary thereto;   (2)  cost of operating heating, ventilating, and air conditioning systems, including maintenance services, utilities and supplies purchased, and repairs, but excluding the cost of replacements and betterments to systems;   (3)  cost of maintaining, striping, repairing and lighting the grounds around the building and the paving, curbs, walkways, landscaping, drainage and lighting facilities in the vicinity of the building;   (4)  cost of operating, maintaining, and repairing elevator (s) but excluding the cost of replacement or betterment;   (5)  cost of providing security, maintaining corridors, restrooms, and lobby staircases and removing trash and garbage;   (6)  cost of utilities consumed, except electricity paid for by LESSEE;   (7)  cost of operating, maintaining and repairing common areas of the building but excluding any building structural component repairs, replacements or betterments;   (8)  cost of fire (including extended coverage and vandalism and malicious mischief), Use and occupancy, liability, and boiler and machinery insurance coverages, all as apply to the premises;   (9)  cost of maintenance and repairs required of LESSOR under the provisions of this lease excluding any building structural component repairs, replacements, or betterments. While the building is below 100% occupancy, whether in the current leasehold year or in the previous year, so that cost comparisons between two years will be equitable, the foregoing items of operating expenses shall be adjusted to reflect what they would have been had the building been 100% occupied.   The mention of an item of cost in the foregoing provisions shall not be construed to impose any obligation to incur the cost of such item.

D.  "Leasehold year" shall mean each succeeding twelve months' period commencing with the first day of the term hereof.

E.  There shall be no adjustment of rental for the first leasehold year of the term hereof; and in no event shall Paragraph 4.2 operate to reduce the rental below that stated in Paragraph 4 hereof.

F.  If LESSEE shall dispute any item or items included by LESSOR in determining the expenses for maintaining and operating the building or the additional expenses which would have been incurred had the building been ninety-five percent occupied, and such dispute is not amicably settled between LESSOR and LESSEE within thirty (30) days after statements therefor have been rendered either party may, during the thirty (30) days next following the expiration of the first mentioned thirty (30) days refer, such disputed item or items to a reputable firm of certified public accountants selected by both LESSOR and LESSEE for decision and the decision of such firm shall be conclusive and binding upon LESSOR and LESSEE.   The expenses involved in such determination shall be borne by the party against whom a decision is rendered by said accountants, provided that if more than one item is disputed and the decision shall be against each party in respect to any item or number of items so disputed then the expenses shall be apportioned according to the number of items decided against each party.   If LESSEE shall not dispute any item or items of any such statement within thirty (30) days after such statement has been rendered, LESSEE shall be deemed to have approved such statement.

3

4.4   <u>Rentable Area/Records.</u>

 ~~In the event of a change in the gross rentable area of the premises, then the percentage figures referred to in the preceding sections of this Item 4 shall be proportionately increased or decreased.~~

LESSOR shall keep and make available to LESSEE for a period of sixty (60) days after statements are rendered as provided in this Paragraph 4.1 and 4.2, records in reasonable detail of the real estate tax payments and the expenses for maintaining and operating the building for the period covered by such statement or statements at reasonable times during business hours.

4.5   <u>Additional Rent.</u>

All costs and expenses which LESSEE assumes or agrees to pay pursuant to this lease shall at LESSOR'S election be treated as additional rent and, in the event of nonpayment, LESSOR shall have all the rights and remedies herein provided for in the case of nonpayment of rent or of a breach of condition.

5.   <u>SECURITY DEPOSITS.</u>

LESSEE has paid to LESSOR upon execution of this lease the sum of <u>Two Thousand Six Hundred Sixty-Six Dollars and sixty-seven cents</u>(<u>$2,666.67</u>) as security for the performance of LESSEE'S obligations hereunder including the payment of any rentals.  In the event of a default by LESSEE, LESSOR at its option may apply such part of the deposit as may be necessary to cure the default, and if LESSOR does so, LESSEE shall upon demand redeposit with LESSOR an equal amount to that so applied so that LESSOR will have the full security deposit on hand at all times during the term of this lease.  Upon the termination of this lease (provided LESSEE is not in default hereunder), LESSOR shall refund to LESSEE any then remaining balance of the deposit without interest.  In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, LESSOR shall have the right to transfer the deposit to the vendee or LESSEE and LESSOR shall thereupon be released by LESSEE from all liability for the return of such deposit; and LESSEE agrees to look to the new LESSOR solely for the return of said deposit; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the deposit to a new LESSOR.

6.   <u>UTILITIES.</u>

LESSOR shall furnish hot and cold water for sanitary purposes, cold water for drinking, heat, light (including florescent light bulbs), electricity and air conditioning to LESSEE'S premises during all hours the building is open for normal office functions.  If LESSEE'S usage of said utilities and/or other services provided for in this lease exceeds the building standards, LESSOR may charge LESSEE and LESSEE agrees to pay for the utility usage or service which exceeds the standard for the building.  Building standards for utilities and services are described in Exhibit "C".

7.   <u>SERVICE BY LESSOR.</u>

Except as herein otherwise provided, LESSOR shall furnish the following services:

(1)  automatic, self-service passenger elevator service, as reasonably required;  (2) cleaning service, including window cleaning;  standard for the building including the supplying and installing of paper towels, toilet tissue and soap;  (3)  maintenance of the public areas, grounds, walks and parking lot adjacent to the demised premises including the removal of trash and rubbish and maintaining the parking lot and walks reasonably free of ice and snow.

4

8.   <u>MAINTENANCE AND REPAIR:  ALTERATIONS.</u>

Section I.  LESSEE shall at its expense keep in good order, condition, and state of repair all portions of the premises with the exception of the structural portions thereof which shall be the responsibility of LESSOR.  Any damage which occurs to the premises which might have been precluded or avoided by reasonable tenant precautions will not be considered reasonable use.  LESSEE shall reimburse LESSOR on demand for the cost of repairing any damage to the premises or the building caused by LESSEE or its employees, agents or invitees.  In the event LESSEE fails to comply with the requirements of this Section, LESSOR may effect such maintenance and repair and the cost thereof with interest at 1 1/2% per month, shall be immediately payable to LESSOR as additional rent.

Section II.  LESSEE shall not make any alterations, additions or improvements to the premises without first obtaining LESSOR'S prior written consent.  LESSOR may make any repairs, alterations, or improvements which LESSOR may deem necessary for the preservation, safety or improvement of the premises or the building.  All alterations, additions and improvements made by LESSEE shall become the property of LESSOR upon the making thereof and shall be surrendered to LESSOR upon the expiration of this Lease.

Section III.  LESSOR agrees to complete the construction and equipping of the building in accordance with the plans and specifications marked Exhibits "A" and "B" attached hereto and made a part hereof.  All finish work in excess of the standard allowances (as described in Exhibit "B") shall be at LESSEE'S expense.  All installations, additions or changes which LESSEE requests be made by LESSOR over and above those prescribed in Exhibits "A" and "B" shall be made by LESSOR at LESSEE'S sole expense.

9.   <u>PARKING.</u>

LESSOR agrees to provide LESSEE with parking privileges in the parking area adjacent to the demised premises, together with adequate ingress and egress thereto for the use of LESSEE'S employees, customers, and invitees.

10.   <u>USE OF PREMISES.</u>

LESSEE shall use and occupy the premises during the term hereof for office purposes only, and for no other purpose, and shall not use or permit the premises to be used for any unlawful or illegal business or purpose.  LESSEE shall not do or permit anything to be done in or about the premises, or bring or keep anything therein, which will increase the rate of fire insurance upon the building.  If by reason of failure of LESSEE to comply with the provisions hereof including, but not limited to, the use to which LESSEE puts the premises, the fire insurance rate shall be higher than it otherwise would be, then LESSEE shall reimburse LESSOR as additional rent hereunder, for that part of all fire insurance premiums paid by LESSOR, which are charged as a release, and shall make such reimbursement upon the first day of the month following payment of such additional fire insurance premiums by LESSOR.

LESSEE shall comply with all laws, ordinances, orders and regulations affecting the demised premises.

LESSOR shall have the right at anytime during the lease term of this lease, upon giving LESSEE ~~thirty (30)~~ ninety (90) days notice in writing to provide and furnish LESSEE space elsewhere in the building of approximately the same size and area as the herein demised space and to remove and place LESSEE in such new space.  Any such substitution is affected for the purpose of accommodating a tenant that will occupy all or a substantial portion of the net rentable area of the floor on which the leased premises are located, and if LESSEE is occupying the leased premises at the time of any such substitution, LESSOR shall pay the expense of moving LESSEE, its property and equipment to the new premises, and shall at its sole cost, improve the new premises with improvements substantially similar to those located in the leased premises.  Should LESSEE refuse to permit the LESSOR to move LESSEE to such new space at the end of said ~~thirty (30)~~ ninety (90) day period, then in that event, the LESSOR shall have the right to cancel and terminate this lease effective immediately, without further notice to LESSEE.  In the event LESSOR moves LESSEE to said new space, then this lease and each and all of the terms, covenants, and provisions thereof, shall thereupon remain in full force and effect and be deemed applicable to such new space.